IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MCKENZIE HILL, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00979-O |
| | § | |
| ENCHANTMENT HOTELS, INC., | § | |
| | § | |
| Defendant. | § | |

## OPINION & ORDER

Before the Court is Plaintiff McKenzie Hill's Motion for Entry of Default and for Default Judgment Against Defendant Enchantment Hotels, Inc. d/b/a Spa Paws Hotel (the "Motion") (ECF No. 10), filed April 11, 2024. The Clerk of the Court entered default on March 28, 2024. *See* Clerk's Entry of Default, ECF No. 9.

After considering the Motion, the pleadings, and applicable law, the Court holds that Plaintiff's Motion should be, and is hereby **GRANTED in part and DENIED in part**.

## I.   BACKGROUND

Plaintiff McKenzie Hill ("Hill") brought this suit against Enchantment Hotels, Inc. d/b/a Spa Paws Hotel ("Defendant") alleging sex/pregnancy discrimination pursuant to Title VII of the Civil Rights Act of 1964 and the Pregnancy Discrimination Act, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e-1, *et seq.* and 42 U.S.C. § 1981a.

Hill began her employment with Defendant—a luxury dog hotel and "spa"—in August 2017 as a dog attendant. (Pl.'s Cmpl. ¶ 10, ECF No. 1). Hill had no disciplinary issues and was considered a "great employee" by Defendant. *Id.* at ¶¶ 10, 17. Hill worked (on average) 40 hours a week for $10.00 per hour, thus earning roughly $400 a week. (Decl. of Hill ¶ 4, ECF No. 10-1).

1

Around early May 2018, Hill announced to Janice Grimes ("Grimes")—owner of Defendant Spa Paws—that she was pregnant. (Pl.'s Cmpl. ¶ 11, ECF No. 1). Hill explained to Grimes that she intended to continue working full time and take a short six-to-eight-week maternity leave after giving birth. *Id.* Upon completion of her maternity leave Hill planned to return to work. *Id.*

On May 25, 2018, Grimes met with Hill and told Hill that "she 'can't let the pregnant thing go on too long,' and that Grimes could not 'keep a pregnant person here forever.'" *Id.* at ¶ 12. Grimes reminded Hill that she had warned her of her coming termination. *Id.* Despite Hill asserting that her OBGYN had cleared her to continue working with dogs, Grimes insisted that a doctor would not allow Grimes to continue working with dogs. *Id.* Grimes "compared Hill to previous employees who worked while pregnant, claiming that one employee got too big to bend over to pick up dogs, and asserted that Hill would have the same problem." *Id.* at ¶ 13.

Grimes told Hill: "I have to protect myself . . . because I have a business to run"; "I don't feel comfortable having a girl pregnant in my pet hotel"; "You're a great employee . . . it's just the damn liability of it." (Pl.'s Cmpl. ¶¶ 15, 17, ECF No. 1).

When Hill was terminated from her position, she was only four months pregnant, and her doctor had cleared her to continue working at the dog hotel. *Id.* at ¶ 13. During Hill's time at Spa Paws, "non-pregnant employees of Spa Paws were not discriminated against because of their pregnancy (or lack of being pregnant), nor were non-pregnant employees terminated because of their pregnancy (or lack of being pregnant)." (Decl. of Hill ¶ 9, ECF No. 10-1).

Hill filed a Charge of Discrimination against Defendant[1] with the Equal Employment Opportunity Commission ("EEOC") on November 14, 2018 (Pl.'s Cmpl. ¶ 7, ECF No. 1) satisfying

---

[1] Charge Number 450-2018-05960.

the statutory requirement. (Pl.'s Cmpl. ¶ 7, ECF No. 1). Hill's daughter was born on December 3, 2018. (Decl. of Hill ¶ 4, ECF No. 10-1). On June 27, 2023, the EEOC issued a Notice of Right to Sue letter ("Right to Sue"), allowing Hill to file an action. (Pl.'s Cmpl. ¶ 8, ECF No. 1).

Plaintiff filed her complaint on September 5, 2023, within 90 days of the receipt of her Right to Sue. (ECF No. 1). After multiple attempts, the summons and complaint were served on October 12, 2023 (ECF No. 5). Defendant failed to respond. Thus, the Court ordered the Plaintiff to move for entry of default on March 15, 2024 (ECF No. 7). On March 28, 2024, Plaintiff requested entry of default (ECF No. 8). Because Defendant has not answered or otherwise appeared, the Clerk of the Court entered default on the same day (ECF No. 9). Hill now moves for entry of a default judgment for pregnancy/sex discrimination and seeks the following damages: (1) back pay; (2) loss of benefits in the past; (3) costs of court and attorneys' fees; (4) mental anguish and emotional distress in the past and future; and (5) punitive damages. (ECF No. 10).

## II. LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure governs the entry of default and subsequent default judgment. The Court may only enter a default judgment upon the completion of three steps. *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). First, the defendant must *default* by failing to plead or otherwise respond to the complaint within the time required by the Federal Rules. *Id.* Next, the Clerk must *enter default* when the plaintiff establishes default by affidavit or otherwise. *Id.* Last, the plaintiff must ask the Court for entry of a *default judgment*. FED. R. CIV. P. 55(b); *N.Y. Life Ins.*, 84 F.3d at 141.

A court has broad discretion to enter default judgments, but they are considered "a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). They

3

are reserved for instances "when the adversary process has been halted because of an essentially unresponsive party." *Id.* The Court recognizes that it may not issue a default judgment against an infant or incompetent defendant unless a general guardian, conservator, or other like fiduciary who has appeared represents that defendant. FED. R. CIV. P. 55(b)(2). Likewise, the Court may not issue a default judgment against an individual defendant in military service until an attorney represents him. 50 U.S.C. § 3931(b)(2).

In deciding whether to grant a default judgment, the Court must decide three questions. First, the Court considers whether entry of default judgment is procedurally appropriate by weighing a non-exhaustive list of six factors: (1) whether there are disputed material issues of fact; (2) whether a good faith mistake or excusable neglect caused the default; (3) whether there has been substantial prejudice; (4) the harshness of a default judgment; (5) whether the grounds for a default judgment are clearly established; and, though not applicable in this case, (6) whether the defendant's motion would oblige the Court to set aside the default. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

Second, the Court assesses the merits of the plaintiff's claims and the sufficiency of the complaint. *See Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("[A] defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered.").

Lastly, the Court resolves any remaining issues regarding the requested amount of damages, if any, and other relief requested. "A default judgment is a judgment on the merits that conclusively establishes the defendant's liability." *United States v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). But a default judgment does not itself establish the *amount* of damages. *Id.* (emphasis added); *Howard v. Weston*, 354 F. App'x 75, 76 (5th Cir. 2009) ("After a default

4

judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages"). Rather, movants for default judgment must provide a detailed factual basis in support of their request for damages. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

### III. ANALYSIS

#### A.    Entry of Default Judgment is Procedurally Appropriate.

Having weighed the six *Lindsey* factors, the Court finds that granting default judgment is procedurally warranted. First, because Defendant failed to appear or file any responsive pleadings in this action, the Court accepts Plaintiff's well-pled facts and finds there are no material facts in dispute. *See Nishimatsu*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact"); *Tex. Guaranteed Student Loan Corp. v. Express Moving, LLC*, No. 3:09-cv-824-O, 2010 WL 727756, at *1 (N.D. Tex. Feb. 26, 2010) (O'Connor, J.). Second, there is no evidence to suggest that Defendant's failure to defend this action arises from a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Third, Defendant's failure to appear causes substantial prejudice to Plaintiff because it prevents her from receiving expeditious relief. *See Wooten v. McDonald Transit Assocs., Inc.*, 775 F.3d 689, 700–01 (5th Cir. 2015) (suggesting it would be unfair to make the plaintiffs wait for relief because of a defendant's failure to heed the court); *United States v. Fincanon*, No. 7:08-cv-61-O, 2009 WL 301988, at *2 (N.D. Tex. Feb. 6, 2009) (O'Connor, J.) (holding that the defendant's failure to respond brought the adversary process to a halt and prejudiced the plaintiff's interests). Fourth, Defendant's failure to respond, despite receiving proper service, mitigates the harshness of a default judgment. *See Fincanon*, 2009 WL 301988, at *2 (citing *Lindsey*, 161 F.3d at 893). Defendant has had ample time to respond to the Complaint as Defendant was properly served over six months ago. *See id.*

(suggesting the defendant had sufficient time to answer the complaint when plaintiff requested an entry of default thirty-five days after serving the defendant). Fifth and finally, though Defendant has not challenged default in this case, the Court is presently unaware of any "good cause" to set aside the default if it is later attacked. *See Lindsey*, 161 F.3d at 893 (citing FED. R. CIV. P. 55(c)).

Procedurally, there is no evidence that Defendant is an infant, incompetent, or engaged in military service. Thus, having reviewed the applicable law and circumstances of this case, the Court finds that granting default judgment is procedurally appropriate.

### B.    Hill's Pleadings Establish a Sufficient Basis for Default Judgment.

The Court accepts the well-pleaded allegations in Plaintiff's Complaint as true. *Nishimatsu*, 515 F.2d at 1206. "Given their default, Defendants have admitted the well-pleaded facts set forth in the complaint." *Ford Motor Credit Co. LLC v. Hancock*, No. 3:14-CV-0280-P, 2015 WL 13118076 at *3 (N.D. Tex. Mar. 16, 2015). At the default judgement stage, the well-pleaded factual allegations "need only 'be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *See Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Detailed factual allegations are not required. *Id.* Here, Plaintiff's cause of action is a pregnancy discrimination claim under Title VII of the Civil Rights Act of 1964 and the Pregnancy Discrimination Act, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e-1, et seq. and 42 U.S.C. § 1981a. Having reviewed the pleadings, the Court finds Plaintiff has established a sufficient basis to enter default judgment because Plaintiff has established a valid discrimination claim.

Title VII of the 1964 Civil Rights Act states that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any

individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex[.]" 42 U.S.C. § 2000e-2(a)(1). The definition of "sex" was amended as follows when Congress passed the Pregnancy Discrimination Act (PDA) in 1978:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 2000e-2(h) of this title shall be interpreted to permit otherwise.

*Id.* § 2000e(k).

Pregnancy discrimination claims are analyzed with the same rules as general discrimination claims. *Garcia v. Woman's Hosp. of Tex.*, 97 F.3d 810, 813 (5th Cir. 1996). To establish a Title VII discrimination case, a plaintiff must "prove her claim either through direct evidence, statistical proof, or the test established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Urbano v. Cont'l Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir. 1998), *abrogated on other grounds by Young v. United Parcel Serv., Inc.*, 575 U.S. 206 (2015). "The *McDonnell Douglas* test requires the plaintiff to show:

> (1)  she was a member of a protected class,
> (2)  she was qualified for the position she lost,
> (3)  she suffered an adverse employment action, and
> (4)  that others similarly situated were more favorably treated." *Id.* (cleaned up).

Within the *McDonnell Douglas* test, termination of employment can be an adverse employment action. *See Garner v. Stageline* Co., No. 4:21-CV-0385-P, 2022 WL 3928400, at *3 (N.D. Tex. Aug. 30, 2022).

First, at the time of the incident, Hill was pregnant and thus a member of a protected group. (Pl.'s Cmpl. ¶¶ 10, 11, ECF No. 1); (Decl. of Hill ¶ 2, ECF No. 10-1). Second, Hill was qualified

for her position, a "great employee" with no history of disciplinary issues. (Pl.'s Cmpl. ¶¶ 10, 17, ECF No. 1). Third, Hill's termination due to her pregnancy was an adverse employment action. (Pl.'s Cmpl. ¶ 12, ECF No. 1). Fourth, similarly situated employees were more favorably treated than Hill. (Decl. of Hill ¶ 9, ECF No. 10-1). Thus, Plaintiff has presented a valid pregnancy discrimination claim sufficient to enter default judgement.

### C.    Plaintiff is Partially Entitled to her Requested Relief.

Hill seeks the following categories of damages: (1) back pay; (2) loss of benefits in the past; (3) costs of court and attorneys' fees; (4) mental anguish and emotional distress in the past and future; and (5) punitive damages. (Pl.'s Mot. for Default J. 8, ECF No. 10) Having considered the pleadings and the applicable law, the Court finds Hill is entitled to back pay and attorney's fees.

### 1.    Plaintiff is awarded of $10,800 in back pay.

"In a Title VII case, there is a presumption in favor of awarding back pay in order to effectuate the statutory goal of 'mak[ing] persons whole for injuries suffered on account of unlawful employment discrimination.'" *Garner v. Grenadier Lounge*, No. 06-13318, 2008 WL 2761158, *2 (E.D. Mich. July 15, 2008), (quoting *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975)). Back pay compensates the employee for what [s]he would have earned absent the employer's violation of Title VII. *Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 482 (5th Cir. 2007), *order clarified* (Sept. 27, 2007) (cleaned up). "Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the [the Equal Employment Opportunity] Commission." 42 U.S.C. § 2000e-5. The burden of proof of failure to mitigate lies on the defendant to show that the employee did not exercise reasonable due diligence to obtain alternative work. *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 393 (5th Cir. 2003).

Hill worked (on average) 40 hours a week for $10.00 per hour, thus earning roughly $400 a week. (Decl. of Hill ¶ 4, ECF No. 10-1). Hill is seeking back pay damages between May 26, 2018 (the first day after her termination) through December 2, 2018 (the day before Hill's daughter was born), amounting to $10,800 in back pay damages. *Id.* By defaulting, Defendant has abandoned the opportunity to raise the affirmative defense of failure to mitigate damages. *See Vaughn v. Neb. Furniture Mart, LLC*, No. 3:19-CV-1220-C-BK, 2020 WL 1695695, at *3 (N.D. Tex. Mar. 12, 2020), *R. & R. adopted*, No. 3:19-CV-1220-C, 2020 WL 1694782 (N.D. Tex. Apr. 7, 2020).

Thus, the Court finds Plaintiff's back pay award of $10,800 appropriate.

### 2. The Court Denies Plaintiff's Claim for "lost benefits."

Plaintiff provides no evidence of the benefit of "doggy daycare" being a term of the employment agreement with Defendant. (Decl. of Hill ¶¶ 5, 8, ECF No. 10-1). Thus, the request is denied.

### 3. Attorney's Fees are appropriate.

Title VII directs: "[i]n any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs[.]" 42 U.S.C. § 2000e-5.

Courts in the Fifth Circuit primarily use the lodestar method to calculate attorney's fees. *Tollett v. City of Kemah*, 285 F.3d 357, 367 (5th Cir. 2002) (citing *Fender v. Zapata P'ship, Ltd.*, 12 F.3d 480, 487 (5th Cir. 1994). "A lodestar is calculated by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work." *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). After conducting the lodestar calculation, courts may increase or decrease the lodestar based on the factors set out in *Johnson v. Ga. Highway*

*Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989); *see also Heidtman*, 171 F.3d at 1043. Courts may not adjust the lodestar based on a factor that was already considered when determining the original lodestar amount. *Johnson*, 488 F.2d at 717–19. The *Johnson* factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* To facilitate in the lodestar calculation, courts require plaintiffs to produce documentation sufficient to support their requested fees. *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1044 (5th Cir. 2010).

Here, Plaintiff requests $10,725 in attorneys' fees and $566 in costs of court. (Decl. of Hill ¶ 8, ECF No. 10-1). To support the request, Plaintiff's counsel asserts that he expended 19.5 hours of work at the rate of $550 and hour. (Decl. of Sinkule ¶¶ 12, 14, ECF No. 10-2). Additionally, Plaintiff's counsel asserts an expenditure of $566 in cost of court ($402 filing fee, $125 in civil process fees, $36 in postage, and a $3 fee with the Texas Secretary of State). *Id.* at ¶ 15. The Court assumes the truthfulness of Plaintiff's allegations and will award attorney's fees in the amount of $11,291 ($10,725 in attorneys' fees and $566 in costs of court). The Court finds no need to adjust this amount based on the *Johnson* factors.

####        4.        Mental Anguish and Emotional Distress Award is Not Appropriate.

The Plaintiff's briefing misconstrues the current state of the law in the Fifth Circuit:

> Compensatory damages for emotional harm, including mental anguish, will not be presumed simply because the complaining party is a victim of discrimination. *DeCorte v. Jordan*, 497 F.3d 433, 442 (5th Cir. 2007). The award of damages must be supported by specific evidence of the nature and extent of the harm. *Patterson v. P.H.P. Healthcare Corp.,* 90 F.3d 927, 938 (5th Cir. 1996). Such evidence may include medical or psychological evidence in support of the damage award. *Id.* at 940. A plaintiff's conclusory statements that he suffered emotional harm are insufficient. *See Brady v. Fort Bend Cnty.,* 145 F.3d 691, 719 (5th Cir.1998).

*Miller v. Raytheon Co.*, 716 F.3d 138, 147 (5th Cir. 2013).

To recover for emotional distress a plaintiff must show two necessary elements. *Thomas v. Tex. Dep't of Crim. Just.*, 297 F.3d 361, 368 (5th Cir. 2002).

(1)        "[S]pecific evidence of the nature and extent of the harm." *Id.*

(2)        Provide "more than vague allegations to support [the] claim. *Id.* [C]orroboration and expert testimony" are preferred. *Id.*

In *Miller*, the plaintiff "presented no expert medical or psychological testimony of the extent of his mental anguish." *Miller*, 716 F.3d at 147. The plaintiff did not "seek the assistance of any health care professional or counselor" or provide evidence of such behavior. *Id.* Thus, the Fifth Circuit vacated the mental anguish award because the plaintiff's "self-serving testimony [was] legally insufficient." *Id.; see also Vaughn*, 2020 WL 1695695, at *3–4 (Emotional distress and mental anguish award in employment discrimination suit denied because "[p]laintiff's only evidence of emotional distress is his affidavit."); *but cf. Decorte v. Jordan*, 497 F.3d 433, 443 (5th Cir. 2007) (Compensatory damages for emotional distress upheld where plaintiff's provided the testimony of a psychologist).

Here, while Hill provides specific details of "bouts of crying" and "not being able to eat," she provides no corroborating testimony or evidence of any treatment or consultation with a psychologist. (Decl. of Hill ¶ 6, ECF No. 10-1). Thus, as all the Court has to consider is "self-serving testimony," Plaintiff's request for compensatory damages for emotional distress and mental anguish is denied.

### 5.   Punitive Damages are Not Appropriate.

"A complaining party may recover punitive damages under this section against a respondent . . . if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a. "The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999). "[I]n the context of § 1981a, an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages." *Id.* at 536. Intentional discrimination does not automatically result in punitive damages. *Id.* For example, an "employer may simply be unaware of the relevant federal prohibition" or an employer could discriminate believing "its discrimination is lawful." *Id.* at 536 –37.

Here, Hill points to Defendant's alleged statements to show intentional discrimination and Defendant's knowledge of the violation of federal law. Hill's complaint alleges that Grimes told her "I have to protect myself . . . because I have a business to run"; "I don't feel comfortable having a girl pregnant in my pet hotel"; "You're a great employee . . . it's just the damn liability of it" (Pl.'s Cmpl. ¶¶ 15, 17, ECF No. 1). However, Defendant's knowledge of a possible liability does

not suffice to show that Defendant was specifically aware of the violations of federal law or not made in good faith. Thus, Plaintiff's request for punitive damages is denied.

### D.   CONCLUSION

Based on the foregoing, the Court finds that Plaintiff's Motion should be **GRANTED in part and DENIED in part**. Accordingly, the Court enters default judgment as follows:

(1)   Plaintiff shall be **AWARDED** statutory damages in the amount of $10,800; and

(2)   Plaintiff shall be **AWARDED** attorney's fees in the amount of $11,291.

**SO ORDERED** on this **16th day** of **July, 2024**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**